Argued June 3, affirmed June 23, rehearing denied July 14, 1914.

## SHERMAN v. GLICK.

(142 Pac. 606.)

Exchange of Property—Setting Aside—Grounds—Inadequacy of Consideration.

1. Where a widow, 67 years of age, ignorant of business matters, and acting without advice, exchanged a tract worth $3,000 for a tract worth only $750 and $500 in cash, the other party having represented that the house and lot were worth $2,500, the transaction will be set aside and the deeds canceled by a court of equity.

Deeds—Consideration—Sufficiency.

2. Inadequacy of price bid for real property is not sufficient alone to authorize equity to set aside a deed unless it is so gross as to shock a conscientious person.

[As to burden of proving want of consideration, see note in 135 Am. St. Rep. 763. As to recital of one dollar in an instrument as sufficient consideration, see note in Ann. Cas. 1912B, 363.]

Deeds—Consideration—Sufficiency.

3. Inadequacy of consideration for a conveyance of real property, so great as to shock a conscientious person, or inadequacy of consideration with other inequitable incidents, may afford grounds for cancellation of the conveyance.

From Lane: LAWRENCE T. HARRIS, Judge.

Department 1.   Statement by MR. JUSTICE RAMSEY.

This is a suit by Caroline Sherman against L. C. Glick and Daisy A. Glick, his wife, and W. T. Carroll, for rescission and cancellation of certain deeds of conveyances.   From a decree in favor of plaintiff and defendant, W. T. Carroll, defendants L. C. Glick and Daisy A. Glick appeal.   The facts are stated in the opinion of the court.

AFFIRMED.   REHEARING DENIED.

For appellants there was a brief and an oral argument by *Mr. H. E..Slattery.*

For respondents there was a brief and an oral argument by *Mr. Fred E. Smith.*

MR. JUSTICE RAMSEY delivered the opinion of the court.

On or about July 15, 1913, the plaintiff and the defendants L. C. Glick and Daisy A. Glick, who are husband and wife, entered into an agreement with the plaintiff for the exchange of property situated in Lane County.   The plaintiff owned and conveyed to the defendants L. C. Glick and Daisy A. Glick the south half of the east half of the northeast quarter of the northwest quarter of section 27 in township 17 south, range 4 west, of the Willamette meridian, containing 10 acres more or less, except a strip, being the east 30 feet of said premises, reserved for road purposes by a former owner.   The defendants Glick owned and conveyed to the plaintiff lots 4 and 5 of block 15 in Chambers' Addition to the city of Eugene, in Lane County.   The said two conveyances were made and executed at the same time on the 15th day of July, 1913, and the de-

fendants L. C. Glick and Daisy A. Glick, in addition
to conveying to the plaintiff said two lots, at the same
time, paid her in cash $500. They conveyed to her said
two lots and paid her $500 in consideration of the con-
veyance to them by her of said 10-acre tract above
described. The plaintiff conveyed to said defendant
said 10-acre tract in consideration of their conveying
to her said two lots and paying her said $500. Said
10-acre tract is situated nearly four miles from Eu-
gene, and has a house upon it, and an orchard and
other improvements. The said two lots conveyed to
the plaintiff as stated, *supra,* are in the outskirts of
Eugene, and about five blocks from the nearest car
line. The plaintiff commenced this suit to obtain a
rescission of both of said deeds, and of the whole of
the contract in relation thereto, on the ground of fraud.
This suit appears to have been commenced on Febru-
ary 3, 1914.

The portion of the complaint setting forth the al-
leged fraud is as follows:

"That, prior to said sale aforesaid, the defendants
L. C. Glick and Daisy A. Glick, together with their au-
thorized agents, with the intent to deceive this plaintiff
and to induce her to believe that said property in
Chambers' Addition aforesaid was worth the sum of
$2,500, and to induce her to enter into said agreement,
and to make said sale, and to accept said property in
Chambers' Addition aforesaid at said sum, falsely and
fraudulently, and knowing the same to be false and
fraudulent, told and represented to this plaintiff that
said premises were worth $2,500, and that the house
thereon then was a new house and in good condition,
when in truth and in fact the said premises were not
worth to exceed $800, and said house thereon was not
new and in good condition, but was old and in very
poor condition; that plaintiff is an old lady approxi-
mately 67 years of age, not experienced in business,

or in the business of buying and selling real estate, and was a stranger, or nearly so, in the City of Eugene, Oregon, said county, and had always lived in the country, and had little or no knowledge of real estate values in the City of Eugene, and particularly of said premises in Chambers' Addition aforesaid, and did not know the value of said premises, all of which things said defendants knew; that this plaintiff believed the said false and fraudulent statements with reference to the value of said premises in Chambers' Addition aforesaid, and with reference to the house thereon, to be true and relied thereon, and was deceived thereby, and because of said belief, reliance, and deception, and not otherwise, she entered into said contract of purchase and conveyed the said 10 acres to said defendants, and accepted conveyances of said premises in Chambers' Addition; that, upon the exchange of said deeds, plaintiff was paid the sum of $500 in money, and was advised that the other $500 due would be paid shortly, but, when demanded of said defendants, they professed ignorance thereof, and refused to pay the same or any part thereof, or to acknowledge that they owed the same to said plaintiff; that except for said false statements and her believing the same to be true, and relying thereon, and being deceived thereby, this plaintiff would not have entered into said contract, or accepted said property in Chambers' Addition, or have conveyed the said 10 acres aforesaid, nor have accepted the said $500; that, at the time of said sale, the said 10 acres was worth and of the value of $3,500, while said premises in Chambers' Addition was reasonably worth not to exceed $800; that as soon as plaintiff could do so after discovering the fact that said representations aforesaid were false and untrue, and in due time and prior to the commencement of this suit, to wit, on the 18th day of August, 1913, the plaintiff duly tendered to the said defendants L. C. Glick and Daisy A. Glick the sum of $502.75, being the said $500 so paid to her, together with interest thereon at the legal rate from July 15, 1913, to August 18, 1913, and duly tendered to defendants her warranty deed

of and to said premises in Chambers' Addition duly executed, witnessed, and acknowledged, and a deed of and to the said 10 acres from said defendants to plaintiff ready for execution, together with $1 as notary fees for the acknowledgment thereof, together with the deeds received by plaintiff, and advised said defendants that she rescinded said sale on account of said false statements and deceit, all of which tenders said defendants then and there refused, and ever since have and now do refuse to accept.''

As no questions arise on the pleading, it is not necessary to set out the remainder of the complaint. The defendants denied nearly all of the complaint, and then set up briefly their version of said exchange of properties. The reply denied about all of the answer.

The court below found that there was no actual fraud in said transaction on the part of the defendants, or of V. L. Holt, who, as broker, represented both the plaintiff and defendants Glick in making said exchanges of properties.

Among the findings of the court below are the following:

''That from said statement said property in Chambers' Addition was held at $2,500, and, by reason of her ignorance as to values and her age, the plaintiff believed in good faith that the same was worth such sum. That the property sold by plaintiff to defendants Glick is and was reasonably worth and of the value of $3,000. That said property in Chambers' Addition is worth and of the value of $750, and no more. That plaintiff at the time of said transaction believed that the house upon said premises in Chambers' Addition was a new house, but that said house, while not an old house, is very cheaply and poorly constructed, rests upon 4x4 sills, and is situated, as is practically all of said lots 4 and 5 of block 15 in Chambers' Addition, in a low place, and upon the extreme edge of the City of Eugene, and not easily accessible to a street-

car line. That the premises sold by plaintiff to said defendants Glick is reasonably worth $1,750 in excess of the property and money delivered to plaintiff by defendants Glick. That the disparity in value between the premises sold by plaintiff to the defendants Glick, and the property and money received by the plaintiff from such defendants, is so great that, taken together with the facts that plaintiff believed the statement made to her that said premises in Chambers' Addition was held at $2,500, it renders said transaction unconscionable and constructively fraudulent, and it would be a species of robbery under the sanction of law to permit the transaction to stand.''

The court below decreed a rescission of said exchange of property, but held that the mortgage of the defendant Carroll, who loaned the Glicks $900, on said 10-acre tract of land should stand as a first lien thereon, etc.

We have read and examined the evidence, and conclude that the findings of fact of the court below are correct. The evidence shows that the original offer of the plaintiff was to exchange her 10-acre farm for the two lots owned by the Glicks and $1,000 in money; but, that after considering this offer, the defendants declined to pay more than $500 in addition to the two lots for said 10-acre farm, and that the final contract was that the Glicks would convey to the plaintiff said two lots and pay her $500 in cash for said 10-acre tract. The plaintiff finally agreed to this, and the exchange was made.

The plaintiff is a widow, and approximately 67 years old, and poorly educated. She was ignorant of business and of real estate values in Eugene, and, although she examined the two lots and the house on it, she was ignorant as to its value, and she relied on what the defendant L. C. Glick told her as to its value. She

and her daughter testified that L. C. Glick told her that the two lots and the improvements thereon were worth $2,500. Glick does not deny that he made said statement. On cross-examination (Ev., p. 114) Glick was asked this question:

"You want the court to understand that nowhere in the whole proceeding, from beginning to end, did you make any statement to Mrs. Sherman, or to anyone else in her presence, that your place here (the two lots) was worth $2,500?

"A. I do not know whether I did or not."

As the plaintiff and her daughter testify that he told them that this property was worth $2,500, and as he says that he does not know whether he made that statement or not, we find that the weight of the evidence shows that he did tell the plaintiff that it was worth $2,500. He admits that, if he told her the property was worth $2,500, "he was stretching it."

The evidence shows that the two lots were about five blocks from the nearest car line, and that they lie largely in a swale, and that during freshets water stands over part of them. The plaintiff looked at them in July, when there was no water in the swale, and her attention does not appear to have been called to the fact that water stood on a part of these lots at times. She was in the house, but did not go upstairs. The house was not finished. There is evidence showing that the plaintiff was in debt and in need of money to meet pressing obligations, and that this need made her anxious to make the exchange in order to obtain the needed funds. The plaintiff's daughter was not competent to advise her in regard to making this exchange. The deed was made at her little farm about four miles from Eugene, and she appears not to have had there any competent, disinterested person to advise her in

the matter. Mr. Holt, the real estate broker, was the agent of both parties and each of them paid him for his services.

The court below found that the two lots, with the improvements thereon, were worth only $750. Before passing on the case, the judge of the court below, at the request of counsel, personally examined the properties in dispute and thereby had an advantage that we do not possess in passing on the value of the properties. We find that his conclusions in regard thereto are correct, and we affirm them. The court below found that the 10-acre tract that the plaintiff conveyed to the defendants was worth $3,000, and that the property that the defendants conveyed to the plaintiff, and the cash paid her, were worth only $1,250, and that the property received by the defendants was worth $1,750 more than the property received by the plaintiff.

According to the evidence and the findings of the court below, the two lots and the improvements on them were traded to the plaintiff at a valuation of $2,500, or three and a third times what they appear to have been worth, and the plaintiff then believed that they were really worth $2,500.

1. The question for determination is: Should said exchange of properties be rescinded under the facts as stated *supra?*

In *Griffith* v. *Spratley,* 1 Cox, 391, Baron Hotham says:

"Inadequacy of value can never be sufficient, when naked and unattended with other circumstances, to set aside a contract. There are many cases in which it is prudent and advisable for a party to buy a thing at more than its real value. * * At the same time there may be cases where it is sufficient to amount to proof of fraud; but then it must be glaring and gross," etc.

In Kerr on Fraud (4 ed.), pages 184, 185, the author says:

"Mere inadequacy of consideration or inequality in a bargain is not a ground to set aside a transaction, if the parties were on equal terms and in a situation to judge for themselves and perform the act wittingly and willingly. * * But inadequacy of consideration, if it be of so gross a nature as to amount in itself to evidence of fraud, is a ground for canceling a transaction. In such cases, the relief is granted, not on the ground of inadequacy of consideration, but on fraud as evidenced thereby. * * But inadequacy of consideration or the absence of independent professional advice becomes a most natural circumstance when one of the parties to a transaction is, from age, ignorance, distress, incapacity, recklessness, weakness or from humble position or other circumstances, unable to protect himself."

In Bigelow on the Law of Fraud, pages 375, 376, the author says:

"Thus, in a recent case, certain real estate had been sold by an elderly uneducated woman in humble life to a person far above her in station. The agreement was made without the intervention of anyone acting on her behalf; and, it appearing that the consideration paid was inadequate, the sale was set aside, though there was no evidence of fraud on the part of the purchaser. It was said that the purchaser and vendor were in such relative positions as that, according to established principles of equity, it lay on the former to show affirmatively that the price given represented the true value of the estate."

Judge Story, in his work on Equity Jurisprudence (10 ed.), Section 246, says:

"Still, however, there may be such an unconscionable or inadequacy of consideration in a bargain as to demonstrate undue influence; and in such cases courts of equity ought to interfere upon the satisfactory

ground of fraud. But then such unconscionableness or such inadequacy should be made out as would (to use an expressive phrase) shock the conscience and amount in itself to conclusive and decisive evidence of fraud. And where there are ingredients in the case of a suspicious nature, or peculiar relations between the parties, gross inadequacy of price must necessarily furnish the most vehement presumption of fraud.''

Professor Pomeroy in Volume 2 of his work on Equity, Section 928, says:

''If there is nothing but mere inadequacy of price, the case must be extreme in order to call for the interposition of equity. When the inadequacy does not thus stand alone, but is accompanied with other inequitable incidents, the relief is much more readily granted. But even here the courts have established clearly marked limitations upon the exercise of their remedial functions, which should be carefully observed. The fact that a conveyance or other transaction was made without professional advice or consultation with friends, and was improvident, even coupled with an inadequacy of price, is not a sufficient ground for relief, provided the parties are both able to judge and act independently and did act upon equal terms, and fully understood the nature of the transaction, and there was no undue influence or circumstances of oppression.''

In *McGhee* v. *Wells,* 57 S. C. 280 (35 S. E. 529, 76 Am. St. Rep. 567), a part of the syllabus is:

''Inadequacy of price does not mean an honest difference of opinion as to price, but a consideration so far short of the real value of the property as to startle a correct mind.''

In *Archer* v. *Lapp,* 12 Or. 202 (6 Pac. 676), the court says:

''Inadequacy of consideration may be so gross that it shocks the conscience, and furnishes satisfactory and decisive evidence of fraud.''

2, 3. Inadequacy of price paid for real property is
not sufficient alone to authorize a court of equity to
set aside a deed of conveyance, unless it is so gross
as to shock a conscientious person; but, if the inade-
quacy is so great as to shock a conscientious person,
it alone may furnish sufficient ground for annulling
the conveyance. When the price paid is inadequate,
but not grossly so, such inadequacy, with other in-
equitable incidents, may afford proper grounds for
relief.

In this case the evidence shows that the defendant
Glick represented to the plaintiff that the house and
two lots were worth $2,500, and the plaintiff believed
this statement to be true, and accepted said property
as being worth that sum, and, on being paid $500 ad-
ditional, conveyed to the Glicks her little farm that
was worth $3,000.

The house and lots were put in at a valuation of
$2,500, when they were really worth only $750. In
other words, the plaintiff, in this exchange, received
said house and lots as being worth three and a third
times what they were worth.

The plaintiff was advanced in years, almost without
education, ignorant of business and of real estate
values in Eugene, and she acted without competent
disinterested advice. The parties were not on equal
terms, and the plaintiff, although *compos mentis,* was
unable, without competent advice, to protect her rights
in said transaction. Mr. Holt, whom she employed in
the business, was employed also by the defendants.
He testified (Ev., p. 77) that he did not represent to
either party what he thought the property was worth,
and hence the plaintiff, who was ignorant as to the
value of Eugene property, seems to have had no advice
as to the value of the house and lots.

We have read and considered the evidence, and we conclude that the findings of fact and law by the court below are correct, and that the decree of the court below should be affirmed.

We think that the disparity between the value of what the plaintiff conveyed to the Glicks and what she received from them, taken in connection with the other inequitable incidents of the transaction, affords a sufficient basis for a rescission of the whole transaction.

The decree of the court below is affirmed.

AFFIRMED.    REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE BURNETT concur.