JAMES WILLIAM LISTER, Appellee, v. JOSEPH LA PLANT et al., Appellants.

**FRAUD: Inadequate Consideration—False Values.** Evidence reviewed, and held amply sufficient to justify the rescission of a land contract, in view of (a) gross inadequacy of consideration, (b) false representations as to values, and (c) defendant's concealment of his true relation to the property.

*Appeal from Warren District Court.*—LORIN N. HAYS, Judge.

JUNE 27, 1918.

SUIT to rescind exchange of farms resulted in decree as prayed. Defendants appeal.—*Affirmed.*

*C. H. E. Boardman,* for appellants.

*Mears & Lovejoy* and *A. V. Proudfoot,* for appellee.

LADD, J.—I. The plaintiff, two days past 21 years of age, owned 120 acres of land in Hardin County, of the reasonable value of $150 to $155 per acre, subject to a mortgage of $6,700. One McCormack, an insurance agent, and an acquaintance of his for 15 years (as well as his foster father), suggested to him, one day, that if he wished to trade this land for a larger farm, he had a man with such a farm; and introduced the young man to the defendant, La Plant. Three days later, plaintiff called on La Plant, and insisted on going to look at his land; and, having found McCormack, proceeded to Warren County, where he looked at a 339½-acre farm, title to which stood in the name of defendant Holloway, but in which La Plant had an undivided one-half interest. It was incumbered by two mortgages, one for $24,437.50, and the other for $13,000. Three of the witnesses called by plaintiff estimated its value at $75 per acre, and another, at $80. One witness called by defendant thought it worth $100 per acre or better. All these witnesses resided near the land, and were familiar with its character. La Plant put a price of $150 per acre on it, while Holloway fixed $150 as its fair value, saying that they had allowed $140 per acre in trading for it. His father thought it ought to be worth the latter sum. A land agent called by defendant estimated its value at $150 per acre, though admitting that more than half of it overflowed.

The evidence discloses that South River flows through the land, as does Short Creek in another direction, and that all but about 100 acres overflows, some witnesses testifying that this happens about every third year, and others, once every four or five years. During the year of this exchange, the crops were destroyed by excessive over-

flows. In view of the character of the farm, we are inclined to give greater credence to opinions of those living near to it, and familiar therewith for a long period of years. Indeed, we entertain no doubt that the fair market value of this land did not exceed $100 per acre, and was much less than the incumbrance against it. After plaintiff had looked the land over, and consulted with McCormack, the three went to Indianola and exchanged, plaintiff giving his note to La Plant for $3,500, with the understanding that a note and mortgage on his farm in Grundy County would be substituted, as difference. Holloway conveyed the 339½ acres to plaintiff, and the latter, the Hardin County farm to La Plant. As defendant's land was worth nothing above the incumbrances, the net result was that plaintiff had parted with $14,800 worth of property, without receiving anything of value in return. Little wonder that defendants did not care to take the trouble to look at the Hardin County land, for they must have deemed it a good trade even though it were worthless. This inadequacy of consideration for plaintiff's land and mortgage is a strong circumstance tending to show fraud. Inadequacy of price is evidence, slight or powerful, according to its relative amount and other circumstances. Moreover, it may be so gross as that the disparity between the value of the subject and the consideration may shock the conscience, and alone constitute satisfactory evidence from which the perpetration of fraud may be inferred. 1 Black on Rescission and Cancellation, Section 175; 2 Pomeroy on Equity Jurisprudence, 926 *et seq.; Phillips v. Pullen,* 45 N. J. Eq. 5 (16 Atl. 9) ; *Bruner v. Cobb,* 37 Okla. 228 (131 Pac. 165) ; *Sherman v. Glick,* 71 Ore. 451 (142 Pac. 606) ; *Stephens v. Ozbourne,* 107 Tenn. 572 (64 S. W. 902).

Ordinarily, other circumstances throw sufficient light on transactions where the inadequacy of price is extreme, to render decision based on that alone, unnecessary. Such

cases are rare; and only where the disparity is extreme will equitable relief be granted. This is in deference to the freedom of contract, and in recognition of the right of owners to fix such prices on their property as they may choose. The evidence shows that these defendants allowed $140 per acre in trade; and, though they may have known that this was in excess of its value, it is fair to assume that they must have thought it worth more than the mortgages against it. One of them says he thought the "equity" in it (the value above incumbrances) $8,000 or $10,000. Opinions of value differ greatly, and we are not inclined to give the disparity between the value of plaintiff's property and what he received greater significance than that of a strong and persuasive circumstance tending to show that he was in some manner influenced and deceived.

II.   Shortly after defendants acquired the 339½ acres, they agreed that Holloway should pass as owner thereof, and La Plant as his agent; that $1,000 should be paid any agent who would find a person who would buy the land; that the price should be $140 per acre, and that $7 an acre should be allowed as rent, and titles be exchanged at the time of sale or trade. In pursuance of this plan, La Plant listed the farm with several real estate agents and a life insurance agent, McCormack, on these terms. In negotiating the deal, Lister put a trading price on his land of $200 per acre; and, according to Lister, La Plant declared the 339½ acres worth $175 per acre, and that it would sell for $185 per acre in the fall, and could have rented right along at $7 per acre; and T. J. Holloway corroborated this by testifying that:

"La Plant said they could get $7 an acre rent for this land. He told Lister that. If you buy, we will take it in at $7 an acre.   *   *   *   La Plant told him he could get him $175 or $180 an acre, inside of 6 months."

La Plant denied making any such representations, save that the rent would be allowed, and McCormack did not hear

anything concerning what the land could be sold for. The fair rental value of the land did not exceed $3.50 an acre. Nothing was said of the commencement, in February previous, of proceedings to establish a drainage district, and of the excavation of a ditch through the land, straightening the watercourse of South River, which was subsequently done, and an assessment of $4,827.73 levied against the land,—to say nothing concerning the ditch through the farm.

As Lister's testimony is corroborated by that of T. J. Holloway, who would not be likely to lean in favor of plaintiff, we are inclined to find that La Plant made the representations of value as alleged; and, as he knew that plaintiff was unfamiliar with values of land or its use, in that vicinity, that he so did as statements of fact, rather than mere opinions. *Hetland v. Bilstad,* 140 Iowa 411; *Ross v. Bolte,* 165 Iowa 499.

There is some doubt as to the extent of plaintiff's reliance on these representations. He testified first that he acted on his judgment and that of McCormack; but, on cross-examination, concluded that these matters influenced him. He looked over the land, though, in a somewhat casual way, and without inquiry of disinterested parties concerning it; but the record has left us in doubt as to whether this callow youth would not have exchanged, had nothing been said by La Plant concerning values. We are not ready to say that he would not have done so, and, therefore, treat these misrepresentations as circumstances tending to show the practice of deceit in behalf of defendants. See 1 Black on Rescission and Cancellation, Section 80.

III. The record leaves little or no doubt as to the deception of plaintiff in another respect. Holloway testified that, on the day of the trade:

"La Plant was held out as being my agent, I being the owner of the land, and McCormack was there representing Lister; and that was in accordance with the agreement I

had had with La Plant. That was the way things were to appear."

This is not disputed, save as hereafter appears. The record leaves no doubt that Lister supposed that McCormack was acting as his agent. He testified that he had told Mc-Cormack, before starting to look at the land, that he "would make it worth his while." McCormack denied this, but does not pretend that anything was said concerning his agency for La Plant until after the deal was closed and both were on their way to Marshalltown; and as to whether anything was then said, they disagree. Plaintiff is somewhat confirmed by the circumstance that he did execute a note for $120 to McCormack for his services. The latter explains this by saying that Lister became hilarious on his way home, and boasted that he had made $7,000; when, in response to his (McCormack's) suggestion that, if that were so, he ought to make him a present, Lister agreed to pay him $120, and subsequently executed his note for that amount. This is extremely unlikely, if, as McCormack testified, he told him he was to be paid a commission by La Plant. It may be that plaintiff should have inferred this from McCormack's statement that "he had a man that had a farm for sale," and the fact that he was introduced by him to La Plant as agent, as contended by defendants; but La Plant was posing as agent, and plaintiff was without knowledge that he was interested in the land, other than as Holloway's agent. McCormack was not in the real estate business. Moreover, for him to have appeared as agent for La Plant other than secretly would have been inconsistent with the latter's scheme for the sale of the land. By himself posing as agent of the supposed owner, La Plant manifestly designed that the proposed victim should regard McCormack as his agent and friend; and the course of both La Plant and McCormack is entirely consistent with this theory of the case. McCormack and plaintiff went over the land together. They agreed that it looked

good, and McCormack expressed the opinion that it lay well, and "he didn't see why it couldn't be sold for more." But he did not disclose to plaintiff that the land was then listed with him at $35 per acre less than it was then being priced at; and, when Lister directed McCormack to carry an offer from him to La Plant of $3,500 difference, McCormack took it approvingly, ostensibly as plaintiff's agent, to the ostensible agent of the supposed owner, Holloway. McCormack excuses himself for thus encouraging plaintiff, in that he knew the price on plaintiff's land to have been inflated $15 per acre. This would be $1,800; while that of defendant's land above the listed price was $12,900. Even if the price put on plaintiff's land were $6,000 more than its value, as was the fact, this left the margin $6,900; and the difference in the inflations over actual values, as seen, was much greater.

Even an agent owes something to the party with whom he is dealing in behalf of his principal, and ought not to stultify himself by knowingly misleading one who, not withstanding such agency, is manifestly relying, in large measure, on his judgment. Infinitely more is his course to be condemned where, as agent for another, he knowingly allows the party with whom he deals to negotiate under the mistaken supposition that he is acting for him, and, through such mistake and consequent reliance on his advice, his dupe is defrauded of his means, to the advantage of agent and principal. Such was the scheme concocted by defendants and carried out with aid of McCormack. It is idle for the latter, in the face of this record, to pretend that he did not assume the attitude of assisting plaintiff throughout; nor can La Plant be heard to say that he was not knowingly taking advantage of the situation. He planned to assume the false position of agent, in lieu of that of part owner; and this was quite in harmony with allowing the agent employed by him to act also, ostensibly, for the party with whom he proposed to deal. The citation of authorities is

not necessary to show that this amounted to a fraud on plaintiff. Considered in connection with inadequacy of price, misrepresentation of value, and the deception practiced by the agent and by La Plant as to his relation to the deal, a conclusive case is made out. The decree of the district court is—*Affirmed.*

PRESTON, C. J., EVANS and SALINGER, JJ., concur.