Argued May 9, affirmed June 21, 1977

KNIGHT, *Appellant,*
*v.*
WOOLLEY LOGGING COMPANY, *Respondent.*
(TC 75-2001, SC 24701)
565 P2d 748

Ronald Poole of Slocum and Poole, Roseburg, argued the cause and filed briefs for appellant.

Jack B. Lively, Springfield, argued the cause for respondent. On the brief were Scott M. Galenbeck and Lively & Wiswall, Springfield.

Before Denecke, Chief Justice, and Tongue, Bryson, and Tompkins, Justices.

TOMPKINS, Justice pro tempore.

**TOMPKINS, J.,** pro tempore.

This is a suit to set aside an instrument executed by the plaintiff and her husband in 1968. The instrument is an "Extension to Timber Deed" and extended the original deed of April 7, 1958, given by the plaintiff and her husband to the defendant for another 10 years to midnight, April 6, 1978.

The trial court denied the relief requested and entered a decree for defendant. Plaintiff appeals.

The timber involved is on 160 acres of land located on the Smith River Road near Drain, Douglas County, Oregon. An employee of the Forest Service estimated the tract contained 3.4 million board feet of timber in 1958 and 3.7 million board feet in 1968. The value of the timber was $50 to $60 a thousand in 1968 and about the same in 1958. The amount of timber now is about four million board feet and none of it has been removed. Needless to say, the value of the timber on today's market is much greater.

The tract involved was originally owned by the plaintiff and her husband. Plaintiff's husband transferred his interest to the plaintiff by quitclaim deed in 1957.

Harold Woolley, who died in 1970, was president of the defendant Woolley Logging Company. The plaintiff and Harold Woolley had a common ancestor in that plaintiff's father was a brother of Harold Woolley's father.

Pertinent portions of the Timber Deed and Extension to Timber Deed read:

> "*TIMBER DEED*
>
> \* \* \* \* \*
>
> "The rights of grantee herein to cut and remove said timber shall extend from and after the date hereof to and including April 7, 1968, at which time all rights given hereunder shall cease and determine, except upon written notice Thirty (30) days prior to termination date that

an extension of Ten (10) years shall be granted, if so requested by the grantee."

## "*EXTENSION TO TIMBER DEED*

"FOR AND IN CONSIDERATION of the sum of One and Other Dollars and other valuable consideration paid to them by WOOLLEY LOGGING COMPANY, an Oregon corporation, WILLIAM A. KNIGHT and BEATRICE M. KNIGHT, husband and wife, do hereby grant unto WOOLLEY LOGGING COMPANY an extension of time in which they may fall, cut and remove any and all timber, standing and fallen, living and dead, of whatever size, located on the following described properties:

The Southeast Quarter (SE-¼) of Section Twenty-two (22), Township Twenty (20) South, Range Seven (7) West, W. M., all in the County of Douglas, State of Oregon,

which is an extension of that certain Timber Deed heretofore given and recorded in the Douglas County Records, Instrument No. 246939, Vol. 275, Page 380, and which extension shall continue to and include ten (10) years from the 7th day of April, 1968, terminating at Midnight on April 6, 1978.

"DATED this  29th  day of March, 1968."

The plaintiff relied upon a theory of constructive fraud in seeking to set aside the extension.

The term "constructive fraud" appears to be derived from the findings of the Honorable Lawrence T. Harris, the trial judge in *Sherman v. Glick,* 71 Or 451, 456, 142 P 606 (1914), who said:

" '* * * That the disparity in value between the premises sold by plaintiff to the defendants Glick, and the property and money received by the plaintiff from such defendants, is so great that, taken together with the facts that plaintiff believed the statement made to her * * *, it renders said transaction unconscionable and *constructively fraudulent,* and it would be a species of robbery under the sanction of law to permit the transaction to stand.' " (Emphasis supplied.)

In *Black v. Irvin,* 76 Or 561, 570, 149 P 540 (1915),

the court reviewed the facts of *Sherman v. Glick,
supra,* and said:

> "* * * This was held to be a constructive fraud.
> * * *"

This marks the first and, as far as we can determine,
the last time that the term constructive fraud has been
used by this court.

In the present case in addition to the first count
based on constructive fraud the plaintiff pled a second
count additionally alleging "that the consideration
cited in the 'Extension to Timber Deed' was not paid;
and that the consideration therein named was grossly
inadequate."

The second count appears to be a restatement of the
constructive fraud theory derived from Kerr on Fraud
as quoted in *Sherman v. Glick, supra,* 71 Or at 459:

> "In Kerr on Fraud (4 ed.), pages 184, 185, the author
> says:
>
> " "* * * But inadequacy of consideration, if it be of so
> gross a nature as to amount in itself to evidence of fraud,
> is a ground for canceling a transaction. In such cases, the
> relief is granted, not on the ground of inadequacy of
> consideration, but on fraud as evidenced thereby.
> * * *" "

Fraud is the essence of both counts of plaintiff's
complaint.

We have reviewed the evidence and agree with the
trial court that fraud was not proved.[1] The Woolleys
and the Knights were longtime residents and friends
in the Smith River area. Each had lived on the other's
property and at the time of the trial the Knights had
been living on Harold Woolley's property since 1965.

■ The plaintiff claimed there was a confidential

---

[1] In a memorandum opinion the trial court said:

"* * * The court has carefully studied the record and fails to find
there was any overreaching or any undo (sic) influence asserted by Mr.
Woolley upon either Mr. or Mrs. Knight when the extension was
executed March 29, 1968. * * *"

relationship between the plaintiff and Harold Woolley.

In *Ingersoll v. Ingersoll,* 263 Or 376, 379, 502 P2d 598 (1972), the court said:

"'* * * As explained in the Restatement (Second) of Trusts, § 2, *Comment b,* p. 7 (1959):

"'* * * A confidential relationship exists between two persons when one has gained the confidence of the other and purports to act or advise with the other's interest in mind.'

The *comment* goes on to say that

"'* * * If one person is in a confidential, but not in a fiduciary relation to another, a transaction between them will not be set aside at the instance of one of them unless in fact he placed confidence in the other and the other, by fraud or undue influence or otherwise abused the confidence placed in him.' "

The association between the two families was informal and neighborly, but did not rise to the level of a confidential relationship.

■ The plaintiff's version of the signing of the extension is as follows:

"A. My husband called me and said Harold was there and wanted to see me, and so I came down.

"Q. When you came down in 1968 and on that day, what were your feelings towards Mr. Woolley?

"A. Just like always.

"Q. And that was?

"A. Good friend come to visit.

"Q. You trusted him and confide in him?

"A. Of course.

"Q. Now, can you tell us what conversation you had with Mr. Woolley on that day?

"A. No, I couldn't.

"Q. Do you recall that there was a discussion?

"A. No, there wasn't any discussion.

"Q. What happened? I guess I should ask you that.

"A. Well, he had this paper in his pocket and he said he had brought this paper and he needed me to sign it. And I says, what is it, and he said, well it's just like a bill

of sale for the property, the timber that he had bought, in case anything happened to him or to us, and that only seemed fair.

"Q. What timber did you—

"A. My husband had already signed it when I got down there. Bill had already signed it.

"Q. What timber did you take that to mean?

"A. The 350,000 feet of old growth, excepting those two sentinel trees."

The old growth was located on the north hillside, on the west side of Pearl Creek. There is some suggestion that the original Timber Deed granted more than the parties agreed. Plaintiff's testimony that the timber in question was the "350,000 feet of old growth" continued as follows:

"Q. Where was the old growth located?

"A. We always called it the north hillside, on the west side of Pearl Creek.

"Q. Now, how—did you know how much was there as far as footage?

"A. Only what Harold told us was there.

"Q. What did he tell you was there?

"A. Three hundred and fifty thousand.

"Q. And was—did you reach an agreement with Mr. Woolley as far as the price on that?

"A. Well, there was no argument. We just accepted his word there was 350,000 feet of old growth there and he would pay—and he bought that from us.

"Q. How much did he give you?

"A. Ten thousand dollars.

"Q. Was that in one lump sum payment?

"A. No. I think it was—I think it was over a four year period, $2,500 over a four year—each year for a four year period.

"Q. Now, do you recall signing the original timber deed in 1958?

"A. I have absolutely no recollection of that. There was no—it was just an oral agreement. I had absolutely no recollection of that first timber deed."

The plaintiff testified that she found out about the effect of the extension agreement in 1975 when the

Woolley Logging Company approached her about buying the rest of her property. She testified:

"Q. How did it come about that you learned of this document and its effect? Did that happen after your discussion with Mr. Buckley, your son?

"A. I think so.

"Q. How did you actually come to know; who told you; who showed you?

"A. I believe it was this man that the company sent out with the surveying. I believe he's the one that showed it to me.

"Q. And do you recall when that was?

"A. No. It was in 1975, I'm sure."

From all of the testimony we conclude there may have been a misunderstanding; there may have been mistake but not fraud.

In a memorandum opinion the trial court said "that if the issue had been presented, it might have reformed the deed to cover only the timber lying west and south of Pearl Creek as testified to by the witnesses assuming their testimony would not have been controverted by defendant's witnesses, but this issue is not presented to the court and the court does not feel that under the broad doctrine under the prayer of general equitable relief that it has a right to reform the original timber deed in this matter."

The plaintiff has raised an issue about the 30-day written notice provision of the deed. She argues that since no 30-day written notice was given there can be no extension of time.

██ Extension provisions in timber deeds may be treated as options to renew, depending upon the wording. In this case, option language is not used. We find it sufficient to be guided by the language used and do not find it necessary to pursue the option-to-renew avenues. The 30-day notice requirement became applicable if the grantee wanted to require an extension which the grantor could not refuse. The notice requirement did not mean that the grantor could not give an

extension if the notice had not been given by the grantee. The 30-day requirement did not forbid the grantor from freely granting an extension.

Therefore, the 30-day written notice provision is not applicable because the plaintiff and her husband freely and voluntarily granted the extension and no fraud was practiced.

Affirmed.