Argued and submitted July 14, affirmed as
modified October 13, reconsideration denied November 20,
petition for review denied December 9, 1980 (290 Or 211)

## DREYER,
*Respondent - Cross-Appellant,*

*v.*

## DREYER,
*Appellant - Cross-Respondent.*

## (No. A7804-05757, CA 15348)

617 P2d 955

Susan Elizabeth Reese, Portland, argued the cause and filed the briefs for appellant - cross-respondent.

Lee M. Zittenfield, Portland, argued the cause and filed the brief for respondent - cross-appellant.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

CAMPBELL, J.

## CAMPBELL, J.

Plaintiff brought this suit to cancel a deed by which she conveyed certain real property to her former husband, the defendant. The trial court entered a decree canceling the deed and awarding defendant a money judgment in the amount of $7,200. The monetary award was designed to restore defendant to the position he held prior to the conveyance and to compensate him for improvements made and expenses incurred while he was in possession. On appeal he questions the propriety of canceling the deed and, alternatively, claims that the monetary award was deficient. Plaintiff cross-appeals, asserting the monetary award was overly generous. Our review is *de novo* upon the record. ORS 19.125(3). We affirm the trial court's decree except as hereinafter modified.

On September 9, 1977, a decree of dissolution was entered terminating the parties' marriage of five years. The proceeding was protracted and bitterly contested. One issue which had to be resolved was the disposition of the family residence, a two-bedroom home, which is also the subject of this suit. During the dissolution proceedings the parties stipulated that they had a net equity in the home amounting to $11,000, and they further agreed that a fair distribution would require that they somehow split this equity. By the terms of the decree, plaintiff was accordingly awarded title to the residence and defendant was awarded a lien on the property, in the amount of $5,000, payable within three years.

In the months immediately following the dissolution, plaintiff began having difficulty making the mortgage payments on the house, and there were threats by the mortgagee to foreclose. Her financial difficulties were due in large part to defendant's failure to timely pay her monthly child support of $150 as required by the decree of dissolution. Defendant was two to four weeks late with the child support during the months of September and October and made no payments whatsoever during November and December. Besides the child support, plaintiff's only other

sources of income were her net salary, $400 per month, and child support from a previous marriage, $50 per month. She had two children to support, and her expenses included, among other things, the mortgage payments, $194 per month, and child care payments, $120 per month. She relied heavily on receiving child support from defendant in order to meet these large items of expense.

During this period defendant was fully aware of plaintiff's financial troubles. Although defendant's testimony is contradictory, plaintiff testified that he (defendant) repeatedly told her that she would not be financially able to maintain the house and applied pressure on her to either sell the house on the open market or turn it over to him. Plaintiff further testified that defendant constantly reminded her that she "owed" him $5,000, even though his judgment in that amount was not payable for three years. Defendant told her that the house "wasn't worth two cents," that no one would buy it, and that she would end up losing the house and having to pay him the $5,000 on top of it, if she didn't sell to him.

Defendant also had the assistance of legal counsel during this time. He consulted his attorney to determine what procedures could be taken to revest him with ownership of the premises, and he eventually convinced his former wife that it would be to her advantage to take that course. Plaintiff also testified that, once the transaction was tentatively agreed to, defendant told her she did not have to worry about contacting an attorney and the costs which that would involve. He told her she would not have to worry about legal fees because he would "take care of everything" and have his attorney draw up all the papers. Plaintiff was quite amenable, if not vulnerable, to this suggestion because, as defendant was well aware, she was already heavily indebted to her attorney for his representation of her during the dissolution proceeding.

Defendant's attorney prepared the necessary documents, which were executed by the parties on December 7, 1977. The principal document was

entitled an accord and satisfaction.[1] The effect of this instrument was essentially to give defendant title to the property in satisfaction of the $5,000 lien he held against it. Defendant was to assume the outstanding first mortgage commencing with the December payment, and he was also required to pay on behalf of plaintiff obligations totaling approximately $180. Plaintiff was permitted to occupy the premises without payment of rent until January, 1978.

When viewed in light of the earlier decree of dissolution, the resulting unfairness of this December transaction becomes apparent. In September plaintiff was awarded title to the property, and defendant received a share of the equity by means of a $5,000 lien. Plaintiff was thus left with a net equity of approximately $6,000. Barely three months later, defendant gained ownership, and plaintiff received practically nothing. Plaintiff essentially conveyed away her $6,000 equity for $189[2] plus one or two months free rent.

Shortly after the December transaction was completed plaintiff began to have reservations. When she met with her attorney on another matter the following March, he informed her that she might have some recourse, and she immediately filed this lawsuit. In her complaint she alleged: (1) the transaction should be set aside for inadequacy of consideration, economic duress, and undue influence; and (2) defendant should be required to pay the fair rental value of the property for the time he had been in possession. Defendant answered by way of general denial. He further alleged affirmatively that, should cancellation of the instruments be granted, he should be awarded a money judgment for improvements he made and expenses incurred.

---

[1] The terms of this instrument were fulfilled, and the transaction completed, by plaintiff's execution of a quitclaim deed and defendant's execution of a satisfaction of judgment.

[2] The evidence produced at trial establishes that $189 is the amount which defendant actually paid on plaintiff's obligations.

■ It is well established in Oregon that equity will seize upon inadequacy of consideration, when it is evidence of fraud, as a basis for canceling a conveyance of land. *Putnam et ux v. Jenkins et ux,* 204 Or 691, 285 P2d 532 (1955)(dictum); *Sizemore, Adm'r v. Miller,* 196 Or 89, 247 P2d 224 (1952); *Toney v. Toney,* 84 Or 310, 165 P 221 (1917); *Sherman v. Glick,* 71 Or 451, 142 P 606 (1914). The general rule, as stated in Pomeroy's treatise on Equity, is as follows:

> " * * *[W]hen the inadequacy of price is so gross that it shocks the conscience, and furnishes satisfactory and decisive evidence of fraud, it will be a sufficient ground for canceling a conveyance or contract, whether executed or executory. Even then fraud, and not inadequacy of price, is the true and only cause for the interposition of equity and the granting of relief." 3 Pomeroy, Equity Jurisprudence 634, § 927 (5th ed 1941).

In *Eldridge et al v. Johnston,* 195 Or 379, 245 P2d 239 (1952), the court adopted Pomeroy's further explanation:

> " 'The following seems to be the true rationale of the doctrines concerning inadequacy of price: Whenever it appears that the parties have knowingly and deliberately fixed upon any price, however great or however small, there is no occasion or reason for interference by courts, for owners have a right to sell property for what they please, and buyers have a right to pay what they please. But where there is no evidence of such knowledge, intention, or deliberation by the parties, the disproportion between the value of the subject-matter and the price may be so great as to warrant the court in inferring therefrom the *fact* of fraud. Such a gross inadequacy or disproportion will call for explanation, and will shift the burden of proof upon the party seeking to enforce the contract, and will require him to show affirmatively that the price was the result of a deliberate and intentional action by the parties * * * .' " (emphasis in original) 195 Or at 402-03, quoting 3 Pomeroy, Equity Jurisprudence 637, § 928 (5th ed 1941).

Although inadequacy of consideration may constitute the underlying basis for granting relief, the

burden of showing fraud[3] is a difficult one to bear. This burden is lightened, however, where inadequacy of consideration is accompanied by other incidents of inequitable conduct.

> " 'But even here the courts have established clearly marked limitations upon the exercise of their remedial functions, * * * . The fact that a conveyance or other transaction was made without professional advice or consultation with friends, and was improvident, even coupled with an inadequacy of price, is not of itself a sufficient ground for relief, *provided the parties were both able to judge and act independently, and did act upon equal terms, and fully understood the nature of the transaction, and there was no undue influence or circumstance of oppression.' "*(Emphasis supplied.) *Sherman v. Glick,* 71 Or at 460, quoting 2 Pomeroy, Equity Jurisprudence § 928.

We conclude plaintiff demonstrated circumstances which justify setting aside the conveyance. First, we recognize the great disparity between the value of the property which plaintiff conveyed away and the payments she received as being some indication of overreaching on the part of defendant. Beyond this consideration, however, is the fact that plaintiff was in a very precarious financial condition, caused in large part by defendant's own wrongful conduct. We agree with the trial court that defendant exercised a coercive influence over plaintiff by consciously curtailing support payments. We also find that plaintiff was not initially in favor of the transaction and that it was only through persistent persuasion that defendant induced her to agree. Defendant convinced plaintiff that

---

[3] The cases discussing inadequacy of consideration use the term "fraud" in conjunction with other terms, such as undue influence, overreaching, oppression, and unconscionable bargain. *See e.g., Knight v. Woolley Logging Co.,* 278 Or 691, 695, 565 P2d 748 (1977). (*See also*, 1 Corbin on Contracts 551, § 128 (1963): "There is sufficient flexibility in the concepts of fraud, duress, misrepresentation, and undue influence, not to mention differences in economic bargaining power, to enable the courts to avoid enforcement of a bargain that is shown to be unconscionable by reason of gross inadequacy of consideration accompanied by other relevant factors.") We read these cases as saying that a transaction may be set aside without demonstrating "actionable fraud" in the sense of *Conzelmann v. N.W.P.& D. Prod. Co.,* 190 Or 332, 350, 225 P2d 757 (1950).

the transaction was fair and to her advantage. In doing so, he misrepresented the value of the house and told her that she would not break even if she sold it to someone else. Finally, defendant had the upper hand as regards legal advice and actively discouraged plaintiff from consulting an attorney herself. Based on these considerations, we hold that the deed conveying the property to defendant should be canceled.

■ Having decided to affirm on the issue of cancellation, we next consider what must be done to restore the parties to the positions they enjoyed prior to the conveyance. The trial court reinstated the amount of defendant's judgment under the decree of dissolution and awarded him an additional $4,000 for improvements he made. Defendant assigns as error the trial court's failure to award a greater amount, $8,910, for the improvements. He contends that all the evidence at trial placed the value of the improvements and labor at that amount. This evidence, however, is comprised solely of defendant's own testimony and reveals that defendant himself performed most of the labor. The materials used were largely donated in return for past favors. The trial court specifically found defendant's own estimate to be inflated. The decision to value the improvements at the lower figure primarily involved a credibility judgment, and we see no reason to disturb it. We affirm the decree below insofar as it awards defendant an amount equal to his previous judgment and an additional $4,000 for improvements made.

■ Our review of the record, however, does require us to modify some of the trial court's computations relating to restoration. First, defendant shall recover the following amounts: (1) $189 for payment of obligations owed by plaintiff, and (2) $3,880 for satisfaction of 20 monthly mortgage payments, November 1977 through June 1979.

■ Second, in February 1978 defendant encumbered the subject premises with a second mortgage in the amount of $1,600. The loan which defendant received went to satisfy some of the above mortgage

payments as well as other personal obligations. Defendant is to personally satisfy this debt, from which he will save and render plaintiff harmless. Defendant shall satisfy the debt within three years from the date of entry of the modified decree herein.

Finally, the trial court found the fair rental value of the house to be $300 per month and credited plaintiff in the amount of $5,100, representing 17 months during which defendant was in possession. In her complaint, plaintiff affirmatively alleged a claim for recovery of fair rental value during defendant's occupancy. On this issue she had the burden of proof. ORS 41.240. At trial plaintiff failed to introduce any evidence establishing the rental value of the premises. To credit her with an amount representing rental value was, therefore, error.

By way of summary, defendant is awarded a judgment for the following amounts: (1) $5,000, representing the amount of his previous judgment; (2) $4,000 for improvements to property; (3) $189 for payment of plaintiff's obligations; and (4) $3,880 for satisfaction of mortgage payments. The entire judgment of $13,069 is to be paid within three years from the date of entry of the modified decree herein, together with interest thereon at the rate of nine percent (9%) per annum accruing from that date.

Plaintiff is awarded the real property in question, subject to a mortgage in favor of the State of Oregon Department of Veterans Affairs, free and clear of any ownership claim by defendant.

The decree below will be modified in accordance with this opinion.

Affirmed as modified.